March 4, 1938, the Governor and Council adopted the following resolution:
"Whereas the Commissioners of the several counties have represented to the Governor that the operation of Public Laws, Chapter 105 as amended by Laws of 1933, Chapter 142 will create such a crisis in the financial affairs of the counties as to require the calling of a special session of the legislature, and
Whereas doubt exists as to the interpretation of said statute and it is desired that this doubt shall be removed, now therefore, be it resolved on motion duly made and carried by the Governor and Council that the opinion of the Justices of the Supreme Court be requested upon the following question upon this solemn occasion.
After June 1, 1938 are the counties required to relieve all paupers living within said counties, who have not had their domicile in any town in this state for five consecutive years previous to said date without receiving any public aid other than old age assistance." *Page 564 
The following answer was returned:
To His Excellency the Governor and the Honorable Council:
As justices of the Supreme Court, we furnish this opinion upon your resolution of March 4.
We understand your inquiry to relate only to relief for paupers which is not directly furnished by the State. Under certain legislation (Laws 1937, c. 202) appropriation of state funds is made for assisting certain classes of persons who may be paupers in addition to those of old age. So far as such relief is furnished, the burden of expense therefor on either county or town is determined by the act, and no question in respect thereto has been considered by us.
With your inquiry thus limited, we answer it in the negative.
The act of 1933 (Laws 1933, c. 142) changes the requirements for acquiring a settlement not derivatively obtained. It substitutes domicile in a town for five consecutive years (Ib., s. 1) for a prescribed term of residence and the payment of certain taxes (P.L., c. 105, s. 1, Par. IX, s. 9). But by such change it does not in terms or by implication declare the loss of a settlement already gained before its passage. The express enactments (Ib., ss. 2, 3) for loss either by abandonment of domicile for five consecutive years or by assistance to one as a pauper for five consecutive years after the passage of the act may not be exclusive. Abandonment for less than five years by removal from the State within that period is to be held loss of settlement. But the provision for a new method of gaining a settlement is not a declaration that accrued settlements shall be lost. While it is intended by the act, though not as clearly stated as might be, that any settlement gained either by the repealed or by the repealing law, shall be lost in the ways the act specifically provides, a purpose in the act that the new method of gaining a settlement imposes any loss of an existing settlement is not found. The lessened requirement of time of domiciliary residence and the omission of the condition of paying any taxes which feature the 1933 act, thus making it simpler and less difficult to acquire a settlement, necessarily indicate a legislative policy to increase the burden of town relief for the benefit of the counties. While this policy is in some measure modified by the provisions of the act for new ways of loss of settlement, a construction of the act extending and amplifying the limitations of policy would be legislation. Such further limitations would be in derogation of the policy, to be permitted only if the language of the act were too clear and free from doubt to read it otherwise. *Page 565 
Former cases on kindred legislation are not in point. An act (Laws 1841, c. 605) declared that no person should thenceforth have a settlement unless under some act passed since 1795. This explicitly ended all settlements depending upon legislation enacted prior to 1796. A similar act (Laws 1861, c. 2482) required that a settlement must have been gained after 1819 and then by other than certain methods, for a town to be chargeable for a pauper's support. This necessarily abolished all settlements gained before 1820 and since then by the specified methods. The 1933 act repeals the former law for the direct acquirement of a settlement, but it is silent in passing upon settlements already gained under the former law.
The repeal of a statute renders it thenceforth inoperative, but it does not undo or set aside the consequences of its operation while in force unless such a result is directed by express language or necessary implication. A status established in a manner which becomes proscribed is not lost by the mere fact of the proscription.
Even, as here, where no question of vested rights is involved, the presumption is that the repeal of an act does not invalidate the accrued results of its operative tenure. To undo such results by a repeal is to give it retroactivity, and based upon elemental principles of justice a rule of construction avoids that effect if the language of the repeal does not clearly require it. By the repeal of the law providing for a certain method of acquiring a settlement the legislature did not say that a perfected settlement under the law should be destroyed. It went no farther than to say, by amendment, how a direct settlement must be thenceforth gained. The repeal may have rendered ineffective a partially gained settlement under the repealed law and left it with no standing, since the repealed law no longer had operative efficiency to complete the settlement, but its efficiency while operative was unaffected by the repeal, and full compliance with its terms while it was in force produced a status of settlement which the repeal did not destroy.
A view that a settlement gained prior to the amending act is lost by any relief furnished during the five year period ensuing its passage, because a settlement cannot be gained under the act if assistance is given during the period, is supported only by confused and unacceptable reasoning. It concedes the continuance of the settlement until relief is furnished, but then terminates the settlement, because the relief destroys the continuity necessary for gaining a new settlement. The act provides that a settlement shall be lost by relief furnished only when the relief has been given during five consecutive *Page 566 
years, and to hold that relief furnished in any one of them produces a loss of settlement would not pay even scant respect to the legislative will. To say that the act provides that a settlement gained at the time of its passage is lost by any relief for five years thereafter but after the period only by relief furnished in five consecutive years is to ascribe to the legislature inability to use appropriate language to express its purpose. But there is no disclosure of an intent that to maintain accrued settlements they should go through a probationary term of compliance with the new requirements for gaining a settlement, with the ultimate result that they should become replaced by settlements gained under the new method.
In concluding summary, we are of the opinion that a settlement in good standing when the 1933 act was passed is not lost by subsequent relief to the pauper unless the relief is extended from time to time during a consecutive five year period.
 JOHN E. ALLEN. THOMAS L. MARBLE. OLIVER W. BRANCH. PETER WOODBURY. ELWIN L. PAGE.
March 17, 1938.
 *Page 1