# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1998-CA-01233-COA

**MISSISSIPPI STATE DEPARTMENT OF HUMAN SERVICES**      **APPELLANT**

**v.**

**DOUGLAS F. FARGO**      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/26/1998 |
| TRIAL JUDGE: | HON. JOHNNY LEE WILLIAMS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | STEPHEN C. CHAYER |
| ATTORNEY FOR APPELLEE: | ARTHUR D. CARLISLE |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | DEFENDANT GRANTED ARREARAGE IN CHILD SUPPORT IN THE AMOUNT OF $18,268.44. THE ORDER OF THE SUPERIOR COURT OF ALASKA WHICH INCREASED CHILD SUPPORT PAYMENTS IS WITHOUT PERSONAL JURISDICTION AND SHOULD NOT BE AFFORDED FULL FAITH AND CREDIT. THE CHILD SUPPORT PAYMENTS OF PLAINTIFF ARE MODIFIED FROM $750 A MONTH TO $700 A MONTH. |
| DISPOSITION: | AFFIRMED - 6/6/2000 |
| MOTION FOR REHEARING FILED: | 7/5/2000; denied 8/29/2000 |
| CERTIORARI FILED: | 9/6/2000; denied 11/22/2000 |
| MANDATE ISSUED: | 12/13/2000 |

BEFORE McMILLIN, C.J., BRIDGES, AND PAYNE, JJ.

McMILLIN, C.J., FOR THE COURT:

¶1. The issue presented in this appeal is whether notice of the filing of a motion to adjust the respondent's periodic child support obligation mailed to the respondent's former Alaska address at a time when the movant knew that the respondent had permanently relocated his residence outside the state satisfied due process notice requirements when the respondent denied having actually received the notice. The chancellor refused to afford full faith and credit to the Alaska order increasing child support entered ex parte after the respondent failed to contest the motion, concluding that the procedure employed to notify the respondent was not one reasonably calculated to apprize him of the pendency of the proceeding. We affirm.

## I.

### Facts

¶2. Douglas and Betty Fargo, both Alaska residents at the time, were divorced in 1987. Mrs. Fargo was awarded custody of the three children of the marriage and Mr. Fargo was ordered to pay child support in the amount of $750. In 1985, Mrs. Fargo permanently relocated her and the children's residence to Mississippi. In 1994, the Alaska Child Support Enforcement Division (ACSED), charged by Alaska law with enforcing noncustodial parents' support obligations, filed a Motion to Modify Child Support accompanied by a Notice of Motion, as required by Alaska procedural rules. The motion sought to increase Mr. Fargo's child support. Pursuant to Alaska Rule of Civil Procedure 5, the agency attempted to notify Mr. Fargo of the motion by mailing a copy of the Notice of Motion and Motion to Modify Child Support to the last known address in its file for Mr. Fargo, which was an Alaska address. Shortly before the motion was filed, Mr. Fargo had permanently changed his domicile from Alaska to Mississippi for the purpose, so he testified, of being closer to his children. Though the evidence on the point is disputed, the chancellor found as a matter of fact that Mr. Fargo had informed ACSED of his intention to abandon his Alaska residence and move to Mississippi prior to the time the agency sent the notice to Mr. Fargo's former Alaska address. However, there is no contention that Mr. Fargo informed the Alaska agency of a new address in Mississippi at the time he informed them that he was permanently forsaking his Alaska residence.

¶3. Mr. Fargo denied having actually received the mailed motion and notice. When Mr. Fargo took no steps under applicable Alaska procedural rules to contest the motion, ACSED obtained an ex parte order increasing Mr. Fargo's child support from $750 to $1,597 per month based upon income information that he had provided earlier.

¶4. Upon learning that this order had been entered, Mr. Fargo commenced a proceeding in Forrest County Chancery Court asking that court to assume jurisdiction of his support obligations since he, his former wife, and the children were all residents of the State of Mississippi. He further sought a substantial decrease in his child support, claiming that, due to medical difficulties, he was unemployed with no source of income other than unemployment benefits. After some delays and procedural problems that are of little relevance to the issues presented to this Court for decision, the Mississippi Department of Human Services was allowed to intervene as the statutory assignee of Mrs. Fargo's child support payments. The Department sought to enforce the Alaska modification order according to its terms, claiming that the chancellor was obligated to afford full faith and credit to the order.

¶5. The chancellor, in detailed findings of fact, determined that Mr. Fargo had, in fact, abandoned his residence in Alaska and permanently relocated to Mississippi prior to the time the notice was mailed to his last known Alaska address. The chancellor further found as a matter of fact that ACSED was on notice of Mr. Fargo's intention to move from Alaska prior to the time it mailed the notice to his last known Alaska address. The chancellor held that, under constitutional due process standards, this procedure for giving notice of a pending motion was not one reasonably calculated to actually apprize Mr. Fargo of the proceeding, despite the fact that the method of service employed, according to the chancellor, complied with Alaska procedural law pertaining to notices of hearings to modify divorce judgments.

¶6. MDHS has appealed that determination, claiming that the question of the sufficiency of the notice must be determined according to Alaska law and that, under Alaska law, proof of mailing of the notice to the respondent's last known address gives rise to a presumption of delivery that is not overcome by mere denial of actual receipt of the notice. In effect, MDHS is arguing that to refuse full faith and credit to the modification order under these circumstances is to hold that Alaska's procedural rules regarding notice in these circumstances, even if complied with to the letter, do not pass constitutional due process muster.

¶7. In a second issue involving an evidentiary ruling by the chancellor, MDHS suggests that it was improperly precluded from presenting compelling evidence that would tend to strongly weigh against Mr. Fargo's claim of lack of actual notice. The excluded evidence consisted of an affidavit from an ACSED official that detailed the agency's numerous contacts with Mr. Fargo undertaken in an attempt to amicably resolve the matter of any child support adjustment in the period leading up to the modification hearing. The chancellor excluded the affidavit on Mr. Fargo's hearsay objection. We will deal with this issue first, then consider the full faith and credit issue.

## II.

### The First Issue: The Excluded Affidavit

¶8. MDHS proposed to introduce an affidavit from Michele Wall, a child support enforcement officer for ACSED, which, among other things, purported to detail contacts between Mr. Fargo and ACSED during the period prior to May 1994 when ACSED was gathering financial data as a part of its evaluation of the appropriateness of a child support adjustment. The chancellor excluded the affidavit as hearsay. Miss. R. Evid. 802; *Hyatt v. Leslie,* 10 So. 672, 673 (Miss. 1891). On appeal, MDHS urges that the chancellor erred in that ruling because the affidavit was a record kept in the course of a regularly conducted business activity within the meaning of Mississippi Rule of Evidence 803(6) and that it was self-authenticated pursuant to Rule 902(11). That contention by MDHS is plainly wrong. The affidavit is a special document prepared in anticipation of litigation. The fact that certain information contained in the affidavit may have been obtained from other records that perhaps would qualify for admissibility under the "business records" exception to the hearsay rule does not transform the affidavit itself into a business record. Neither can this litigation-inspired document be considered a public record within the meaning of 803(8).

¶9. Even could the affidavit be found to come under some hearsay exception (such as the "catch-all" provision found in Rule 803(24)), we conclude that it has little or no probative value to the central issue of whether, under the facts of this case, mailing notice to a respondent's last known address at a time when the notice-giver was aware that the respondent no longer resided at that address satisfies considerations of due process. The affidavit details a number of informal contacts between ACSED and Mr. Fargo, but the last reported contact indicating Mr. Fargo was still in Alaska was on March 25, 1994, and the notice of hearing was not mailed until April 19, 1994. In fact, the affidavit reflects that on February 22, 1994, Mr. Fargo had come into the ACSED office and "stated that he was leaving the state . . . ." Thus, even were we to conclude that it was error to exclude the affidavit, it would not require reversal since the error in excluding the evidence would, beyond doubt, be harmless, since it neither proves that Mr. Fargo had actual notice of the motion in time to contest it or that he still resided at the Alaska residence at the time the notice was sent. Miss. R. Evid. 103(a); *Torre v. Jeannin,* 76 Miss. 898, 25 So. 860, 862 (1899).

## III.

### The Second Issue: Full Faith and Credit

¶10. The chancellor determined that the Alaska modification order was not entitled to full faith and credit because due process considerations required that Mr. Fargo be notified of the motion in a manner that could reasonably be calculated to inform him of its pendency in time to affirmatively contest it, should he so desire. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). It was the chancellor's conclusion that the procedure utilized to attempt to notify Mr. Fargo of the pending motion was

not one reasonably calculated to accomplish this purpose and that, for that reason, any judgment based solely on Mr. Fargo's failure to affirmatively contest an adjustment to his child support was void as violative of due process considerations.

¶11. A Mississippi court having personal jurisdiction over a child support obligor under a judgment rendered by a court of competent jurisdiction in another state is required under constitutional notions of full faith and credit to enforce that judgment so long as the obligations sought to be enforced have ceased to be modifiable by the court originally ordering the support payment. *Sollitt v. Robertson,* 544 So. 2d 1378, 1381 (Miss. 1989); *Hinds v. Primeaux,* 367 So. 2d 925, 928 (Miss. 1979). Under Alaska law, once a periodic support obligation falls due, it is unmodifiable except in certain limited circumstances that have no application in this case. Alaska R. Civ. P. 90.3; *Alaska, Dept. of Revenue, Child Support Enforcement Div. v. Bromley,* 987 P.2d 183, 188 (Alaska 1999); *Hendren v. Alaska, Dept. of Revenue, Child Support Enforcement Div.*, 957 P.2d 1350, 1352 (Alaska 1998). Therefore, on its face, it would appear that the obligations imposed by the Alaska judgment and sought to be enforced against Mr. Fargo in Mississippi would be enforceable under the concept of full faith and credit.

¶12. Mississippi recognizes two general exceptions to the requirement of affording full faith and credit to foreign judgments. One is that the judgment was acquired through false representations without which the judgment would not have been granted. *See Cappaert v. Walker,* 680 So. 2d 831, 834 (Miss. 1996). That exception has no application in this case. The other exception, however, warrants further consideration. That exception states that a Mississippi court will not enforce a foreign judgment if it can be demonstrated to the satisfaction of the Mississippi court that the foreign court lacked jurisdiction of the subject matter or the person at the time the judgment was entered. *Id.; Lambert v. Lawson,* 538 So. 2d 767, 769 (Miss. 1989). It is within these broad concepts that the chancellor determined that the Alaska modification was not enforceable. While we disagree to some extent with the reasoning employed by the chancellor to determine that the Alaska modification violated Mr. Fargo's rights to due process, we do agree that the Alaska court ran afoul of Mr. Fargo's constitutional due process protections when it purported to amend his support obligation in an ex parte proceeding under these circumstances. We conclude that Mr. Fargo's failure to affirmatively contest the motion was based solely on the fact that ACSED did not fully comply with Alaska procedural rules governing notice procedures and that the procedure actually employed was not one reasonably calculated to notify Mr. Fargo of the filing of the motion and of his resulting obligation to take some affirmative steps to protect his interests in the matter, should he so desire.

¶13. While the Alaska court had, since the commencement of the divorce proceeding, continuing jurisdiction over the person of Mr. Fargo (Alaska Stat. § 25.24.160 (1999); *Balchen v. Balchen,* 566 P.2d 1324, 1327 (Alaska 1977)), nevertheless, it is universally acknowledged that the authority of a court to modify an obligor's support obligations depends upon a due process proceeding for which the obligor has adequate notice and reasonable opportunity to appear and be heard on the question. *See, e.g., Childers v. Childers,* 717 So. 2d 1279 (¶8-9) (Miss. 1998); *Bostic v. Alaska, Dept. of Revenue, Child Support Enforcement Div.,* 968 P.2d 564, 568-69 (Alaska 1998); *Bellamy v. Bellamy,* 674 N.E.2d 1227, 1230 (Ohio Ct. App. 1996); *Wooding v. Williams,* 581 So. 2d 985, 986 (Fla. Dist. Ct. App. 1991).

¶14. Alaska's rules of civil procedure permitted Mr. Fargo to be notified of the filing of a child support modification motion by first class mail sent to his last known address. Alaska R. Civ. P. 5. Under Alaska

Rule of Civil Procedure 77(c), upon receipt of notice of the filing of the motion, Mr. Fargo had a duty to respond within 10 days after service to file a "statement of the reasons in opposition to the motion." (The notice sent in this case allowed 13 days from the date of mailing, which we assume to be an allowance of three days for mail delivery, after which service would be deemed completed.) Alaska R. Civ. P. 77(c).

¶15. There is no dispute that, at the time ACSED mailed its notice, the address it had on file for Mr. Fargo was 3733 W. 42nd Ave., Anchorage, Alaska 99517. While there was evidence, and the chancellor so found, that Mr. Fargo had notified ACSED of his intention to abandon that address and move to Mississippi, there is no contention that he had, by the time the notice was mailed out, notified ACSED of a different specific mailing address in Mississippi. Nevertheless, we must deal with the fact that the chancellor found as a matter of fact that ACSED knew on the date it mailed the hearing notice to the Anchorage address that it was not Mr. Fargo's then-current address.

¶16. The issue therefore becomes whether a party, having actual knowledge that a previously-valid address for the respondent is no longer the respondent's actual address, can nevertheless comply with the provisions of Alaska Rule of Civil Procedure 5 by mailing a notice to an address that remains, in a strictly literal sense, the respondent's "last *known* address." Based on our review of Alaska law on the subject, we are satisfied that such notice does not meet the requirement of Rule 5 and is, therefore, not adequate to satisfy due process considerations unless proof of such mailing is accompanied by additional evidence showing that the movant has made a good faith effort to obtain a more current address for the respondent and one, therefore, more likely to have a reasonable chance of success in actually - as opposed to constructively - informing the respondent of the proceeding.

¶17. The Alaska Supreme Court, in the case of *Rosenberg v. Smidt*, discussed the concept of giving notice by mail to the affected party's last known address. *Rosenberg v. Smidt*, 727 P.2d 778 (Alaska 1986). Though that case dealt with a statutory requirement for giving notice to interest holders in a non-judicial foreclosure of a real property deed of trust, the court also discussed the matter in the context of giving notice in judicial proceedings. In fact, the Alaska court seemed to conclude that a stricter rule would apply in the judicial setting than in the case of a foreclosure because of specific federal due process requirements in judicial proceedings that the notice method employed be one "reasonably calculated to apprize the parties of the pendency of the action." *Id.* at 781. After a lengthy analysis, the Alaska Supreme Court concluded that the term "last known address" meant something more than would appear from a literal reading of the phrase, and concluded that the phrase carried with it an obligation of due diligence on the part of the person giving notice to determine that the address is "that one most likely to give the party to be served notice." *Id.* (citing *Waddell v Mamat,* 72 N.W.2d 763, 766 (Wis. 1955)). In the context of notice of non-judicial foreclosure, the court announced a firm rule:

> We conclude that the last known address is that address most likely to give the affected party notice. The trustee is obligated to exercise due diligence to determine that address. Failure to impose such a requirement would not balance adequately the competing interests involved.

*Rosenburg,* 727 P.2d at 783.

¶18. In *Rosenberg v. Smidt*, the court found inadequate a notice sent to an interested party's last address on record with the mortgagee when the notice came back unclaimed, imposing a due diligence duty on the trustee in that circumstance to obtain a better address, even though the statute specifically permitted notice to be sent to the "last known address." *Id.* at 779-80.

¶19. We can find no reason to conclude that the Alaska court would impose a lesser due diligence obligation when Alaska Rule of Procedure 5 is involved than it would when an identical notice procedure is dictated by statute. We also conclude that actual knowledge that Mr. Fargo was relocating his residence to Mississippi is equally as effective to invoke a duty to further inquiry as is the return of mail sent to a former address.

¶20. Therefore, unlike the chancellor, who determined that Rule 5 had been complied with, we conclude that the notice procedure employed by ACSED to inform Mr. Fargo of the pending modification hearing did not comply with Alaska Rule of Procedure 5. We reach that conclusion because the notice was sent to an address that ACSED knew was not Mr. Fargo's current address and there was no accompanying indication that ACSED had made a diligent effort to obtain an alternate mailing address for Mr. Fargo having a greater likelihood of accomplishing the desired result - the delivery of actual notice of the motion in sufficient time to permit Mr. Fargo to be heard in opposition to the motion.

¶21. Because the order was entered at an ex parte proceeding at a time when Mr. Fargo had no actual knowledge of the pendency of a formal modification proceeding and when he had been afforded no reasonable opportunity to be heard in opposition to the motion, we conclude that the Alaska court was without authority to modify Mr. Fargo's support obligation. We, therefore, affirm the decision of the chancellor on that basis.

¶22. It must be remembered that our decision does nothing to affect those monthly support obligations accruing under the original Alaska divorce judgment that continued to accrue prior to the Mississippi chancellor's modification order. To the extent that any of these obligations remain unpaid, nothing we have decided today alters Mr. Fargo's obligation to pay those amounts or the duty of the appropriate courts of the State of Mississippi to enforce those obligations under the full faith and credit provisions of the Constitution of the United States.

¶23. **THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.**